Good morning. May it please the court, I'm Alan Diamante, court petitioner, Mr. Rivera. In the present case, the IJ denied the petitioner's unopposed motion because it was number barred and untimely. The court provided no explanation as to why the court did not consider the equitable tolling in its decision, except that it merely stated that there was no indication of a delay in receiving notice. On appeal, the board affirmed without an opinion. In its brief, the government concedes that the IJ determination with respect to the numerical limitations is incorrect, that the IJ's decision and issue is raised as to whether or not the IJ had even given adequate basis for denial. The court believes... MR. RIVERA Counsel, I want to make sure I understand the facts right. If I understand right, there's two motions to reopen. The first one, he says, I never knew about it. And your argument directed to that is it's an abuse of discretion not to reopen then. The second one, it looks as though it's more than 180 days after he actually personally received the BIA's decision deciding his first motion to reopen. So, it looks like that's a real problem for your argument, if I've got the facts right. I'm not sure that I do. MR. RIVERA Yes, the first motion, Your Honor, was the motion filed by the individual who was representing to be an immigration representative. Let's say everything's fine for your case on the first one. What about the second one? Okay, with respect to the second one, I'll go directly into the issue of the due diligence. In the second motion, the counsel waited nearly 180 days after preparing a declaration from the respondent. In that case, in that situation, the attorney waited until he got documentation from Consumer Affairs with respect to the case. He reviewed court file. About two months later, he prepared a declaration, obtained documentation, submitted a complaint with Consumer Affairs. MR. RIVERA When was that? That was in March, March, around the end of March of 2002, right? MR. RIVERA One moment, Your Honor, if I may. I'll give you the exact date. MR. RIVERA Then he filed the motion to reopen in September. MR. RIVERA Right. Counsel reviewed court file on January 18th of 2002. On March 24th, he gathered evidence, a declaration, and submitted it to the Consumer Affairs and filed this complaint. Then counsel waited until, I believe it was around September, to file the underlying motion. MR. RIVERA There was another lawyer that was involved at some point along the way, an attorney named Mr. Bustamante. MR. RIVERA That's correct. Apparently Mr. Bustamante MR. RIVERA And there's nothing in the declarations that seem to account for what he did and why he didn't take action on behalf of Mr. Rivera. MR. RIVERA All the information that we have, Your Honor, is that Mr. Bustamante made a Mr. Bustamante had contact with Mr. Bustamante. MR. RIVERA That's correct. MR. RIVERA And then all of a sudden Mr. Bustamante drops out of the picture and there's no explanation about what happened. MR. RIVERA That's correct. MR. RIVERA He goes and apparently contacts you and retains your offices. MR. RIVERA That's correct, Your Honor. Apparently Mr. Rivera did not mention his relationship with Mr. Bustamante. All we can surmise with the evidence is that he had gone to Mr. Bustamante's office and was going to view a court file and apparently never did. MR. RIVERA According to the record here he did review a court file. MR. RIVERA I'm not aware of the record that he reviewed the court file, Your Honor. What I saw in the administrative record MR. RIVERA Maybe I'm wrong. Let me see here. MR. RIVERA What I saw in the administrative record, Your Honor, was attempts made by MR. RIVERA That's right. He made a request and asked that the documents be received before, like, June 8th or something. MR. RIVERA Correct. MR. RIVERA And on that... MR. RIVERA Of 2001. MR. RIVERA That's correct, Your Honor. And the documents indicate that the court made efforts to contact Mr. Bustamante. MR. RIVERA So the underlying issue is why take so much time to file the motion? MR. RIVERA I guess that is the underlying issue, and I don't understand. I don't understand why it was that he lost the first time, got notice of it, and knew that his lawyer had not carried the ball. MR. RIVERA Okay. What he didn't know was what remedy he had, and that's the reason why he sought out other counsels. But also he was hesitant to do anything given the fact that he was fired. MR. RIVERA Once you know that your lawyer is messed up, not filed papers he was supposed to file, and you know your motion to reopen has been denied, I don't understand the law to be that your time is told until you get a really good lawyer who can solve your problem for you. It seems like you've got 180 days from then. MR. RIVERA Yes, Your Honor, but it's our contention that if in a lot of these cases you have unsophisticated individuals who go to someone to get some service, and if they get burned once, it would be reasonable for them to be reluctant to trust somebody else. And in this case, he had gone to so many people seeking assistance. Naturally, it would be understandable for him to be hesitant to go forward with this case. MR. RIVERA Does that mean that as long as you just bounce around between notarios and bad lawyers, you can stay here forever despite a deportation? MR. RIVERA No, not at all, Your Honor. The question is whether or not he underwent due diligence to seek assistance in this case. It goes to the first guy who causes him to fail to go to his court hearing. It goes to the second guy who fails to file the motion in a timely manner even though he provided him all the information. MR. RIVERA How do we know that? I don't think there's Lozada compliance on the second guy, is there? MR. RIVERA I'm not aware. MR. RIVERA You're not aware of Lozada? MR. RIVERA He filed a complaint and the Consumer Affairs contacted him. MR. RIVERA Lozada, you have to give notice to the lawyer and give notice to the Bar Association. MR. RIVERA Correct. There was no lawyer. MR. RIVERA So the lawyer can say how come he didn't do something. And sometimes the lawyer says, because I told him he would have to pay $500 or $1,000 and he never came in with the money. MR. RIVERA Your Honor, I'm very familiar with Lozada, but the issue at the court's inquiring as to whether or not there was adequate Lozada compliance. I'm assuming the court's referring to the fact that there was no Bar complaint filed. Well, there's no evidence that this individual was an attorney. Consumer Affairs indicated that he wasn't an attorney. MR. RIVERA I meant the second guy, Bustamante. MR. RIVERA Bustamante would be the third guy. And he's not alleging that Bustamante was ineffective. Just Bustamante never got back to him with respect to what was he going to review. There's a reason why there's not really a relationship other than the fact that he wasn't going to review court files. If I may at this point, Your Honor, I'd like to reserve the rest of the time for rebuttal. Thank you, counsel. Counsel. May it please the Court, my name is Jennifer Lightbody and I represent the Respondent, the Attorney General. This case concerns the denial of a motion to reopen to rescind an in absentia deportation order, not the denial of a motion to reopen for Nicara. The petitioner in this case was ordered deported in absentia on March 7, 1997. He filed an untimely motion to reopen to rescind on September 12, 2002, five years out of time. The immigration judge concluded that Mr. Rivera did not demonstrate that equitable tolling applied for that entire five-year period. It gave him credit for part of that time. He did, Your Honor. Essentially, right, although he doesn't say so in the order. But he effectively gave him credit. That's right, until January 31, 2000, when he denied the motion for Nicara. Now, the reason that the motion for Nicara is not at issue is because that's a denial of a motion to reopen. When we're talking about in absentia and the 180 days, we're going all the way back to the in absentia order. And this is not, the Nicara motion is not in in absentia order. It would fall under the regular reopening provisions, which has a 90-day time limit. And even under the most generous tolling provisions, that 90-day period had passed by the time the motion to reopen to rescind was filed on September 12. So we're really only talking about going back to the in absentia case. And if you look at the IJ's decision, I think it's really significant to look at the law that the immigration judge sets forth in his decision. And he talks about due diligence and equitable tolling, and that that applies when the alien lacks awareness of the results caused by the fraud of a third party or ineffective assistance. But the immigration judge noted that you have to file your motion within the time limits after tolling is taken into account. When did the petitioner actually get knowledge that he was supposed to leave? He had vital information bearing on the existence of his complaint on January 31st of 2000. That's when he knew that there was a problem. And actually, if you look at his affidavit, he really says, he knows that, right? He knows he's been, he says, I know I was ordered deported in absentia, and I went to the attorney. I asked for my money back. I told him to fix the case. He knew that there was a problem. And so what he did is he tried to find another lawyer, and he did, or an immigration consultant. He goes and finds another immigration consultant. The immigration consultant says, okay, everything is fine. I filed this NACARA motion. And Mr. Rivera doesn't know that it's filed untimely. But he gets the decision from the immigration judge saying this is untimely. And he goes to that immigration consultant and says, you know, I want my money back. You messed up my case. And what are the dates on these events? The, well, we're not, it's not quite clear when he went to that attorney, but he knew about the IJ's decision fairly promptly after that. Because he says at page 55 of the record, well, with respect to the in absentia, he says a couple of months later, I went back to Mr. Baldason, that's the attorney who, with respect to the initial hearing, he says a couple of months later and asked him to give me a copy of my file and asked him to return my money. But at that point he already has the in absentia order because it was sent directly to him, and the record shows it was sent directly, the in absentia order was sent directly to Mr. Rivera at his address. So he knows about that. This is sometime in 2000? This is sometime actually in 1997 because that's when the in absentia order is entered. So he goes to the first immigration consultant a couple of months later, so say maybe May of 97, and says there's a problem, fix it, I want my money back. He knows there's a problem. Okay. Then in December of 1997 he meets the second immigration consultant, and that immigration consultant says I'm going to file the motion to reopen under NACARA for you. He keeps telling him everything's fine, everything's fine, and then he learns, he says at page 56 of his declaration, that after I received the decision I complained to him, meaning the second immigration consultant, and he returned my $700 to me and offered to help me. And so at that point Mr. Rivera knows he's been ordered and deported in absentia. He knows he doesn't have any relief. That is vital information bearing on the existence of his claim. Not that he knew that he actually had a claim for ineffective assistance, but he had vital information. And so what did he do to continue that equitable tolling? And the immigration judge says, you know, you didn't explain to me what you did. And here on review we don't see any abuse of discretion. What did Mr. Rivera do in due diligence to stop that clock from running? I read I.J.'s decision several times I guess. And he lays down, as you pointed out, he sets forth the authority that applies to the motion to reopen, to rescind. And then he jumps over to page 3 and he sets forth his two-sentence analysis, which makes no sense to me in light of what he just said on page 2 of his decision. In light of the? He lays down the authority. Right. Okay. Which he believes applies and it seems to be correct. Okay. Okay. And then he goes over to page 3 and he says it's entitled analysis. Okay. It's two sentences. It makes no sense to me. Okay. Well, first of all we've considered. Absolutely none. Okay. The number bar issue I think we've agreed is up at the table. So he was wrong with that. Right. But when he says it's untimely. Okay. He says, you know, look, there's a hundred and one pages. Well, obviously it's untimely, so everybody agrees with that. Okay. So the question is, is it equitably told? I think that if you look at the immigration judge's decision, that has to be what he's saying. The court denied his motion to reopen on January 31, 2000. Okay. The respondent, meaning Mr. Rivera, did not indicate that there was any delay in receiving the notice of the court's decision. And I think that's where he's saying, look, there isn't any fraud, there isn't any misrepresentation about that 2000 decision. You knew that there was a problem then. And so the time is not equitably told. Well, there was a dispute that he had notice of the notice that he was removed in absentia. The question really was, as counsel said, was there unreasonable delay? Unreasonable delay in seeking to reopen.  To rescind. Right. The I.J. doesn't address that. Well, I think what he's saying here is, so the time, when he says the time is not equitably told, if you go back to the first page of the decision, right, where he lays out the procedural history, he says, you know, you were ordered deported in absentia, then you filed a motion to reopen under NACARA, and that was denied on January 31st of 2000. And then two years later, you file your motion to reopen to rescind. Right. And so if you look at his timeline and then go back to the analysis page where it says, you know, he didn't indicate there was any delay in receiving the 2000 decision. So that's the vital information bearing on the existence of his claim, because the immigration judge talks about that in his legal part of the case, where he says, you know, you've got to have vital information. So we can say, okay, implicitly what the immigration judge is doing is saying, I'm tolling this entire period from 1997 until 2000. Okay, I'm equitably tolling that whole period. But you got the decision in 2000. You knew that there was a problem. What have you done from 2000 until you filed your motion to reopen to rescind in 2002? And it says, you know, I don't see how you can read an awful lot into that one sentence. Well, I think if you look. I'll give you credit. I think if you look. It wouldn't have taken this I.J. much to do it correctly if he'd wanted to. And, Your Honor, I understand the concern here that maybe the analysis part could have been a little bit longer. But I think it would have been. It wouldn't have been any longer. He could have used one word or, you know, a couple of, you know, words on point. But I think, really, the whole. That if you look at it as in the entire decision, that it is still correct. Even if you go. And let's just assume for a minute that, you know, this court were to say, okay, he didn't really learn about this until he had vital information bearing on the existence of his claim. And that's when his attorney went and actually looked at the file from INS's file, which would have been January the 8th of 2000. Okay. Let's look at it from that perspective. He still didn't file within the 180-day period. So even under the most generous tolling provisions, if we start at January 8th of 2000, he's still untimely. And so even if the immigration judge's decision isn't as clear, I think it's clear that his decision that it was untimely is correct. Do I have this right? Basically, adding up all the tolling law that there is, and what you do is you disregard the official deadlines that the petitioner is supposed to follow, and you take 180 days from when he knew everything he needed to know in order to seek relief, and you see if he did it within 180 days of when he knew what he needed to know in order to seek relief. That's right. Is that right? That's right, Your Honor. And this fellow, reading this affidavit, I can't quite put my finger on the dates, whether it's 97 or 2000, when he knows his lawyer's messed up and he has to do something if he wants to stay in the country. Well, I think that the immigration judge said it was 2000. That's when... January 2000? January 31st of 2000. That's when he absolutely knew that there was a problem that hadn't been fixed previously. Whatever the other attorneys had said to him, you know... So then he has to file some motion to reopen within six months of January 31, 2000. That's correct, Your Honor. And when did he file the motion? He didn't file his motion to reopen to rescind until September 12th of 2002. Well, there has to be some equitable tolling that tolls that date. That's right. And that's what the IJ had to decide. That's right, and he didn't establish that. Now, I think, Judge, I see that I'm out of time. Well, it depends, but the IJ never really, at least as far as I can tell, I mean, the way I read this little, I'm sorry, it's three sentences instead of two, but the way I read it, he doesn't really address head-on the unreasonable delay. Well, I think what he's saying is, look, you have to show me that you exercised due diligence during that time, and he didn't do that. Mr. Rivera didn't demonstrate that he was eligible for equitable tolling. I mean, even the question about Mr. Bustamante entering an appearance in this case, the first time he really mentions that is in his petition for review. He didn't mention that before the immigration judge. Did he actually enter an appearance? He did. Mr. Bustamante did enter an appearance, and that's in the file. I'm sorry, I think it might be page 162. If there are no other questions, we ask that the Court deny the petition for review in this case. Thank you, counsel. Counsel, to me it looks like five years after he's been deported, he's still here, and he knew that his lawyers had dropped the ball in 97, and he knew it for absolute certain in January of 2000. I just don't understand how he could continue to get equitable tolling. Well, Your Honor, what happened with the two representatives is that they both misled him, the first one saying that there was nothing that could be done. He relied on that. Well, that may be your argument, but the problem is the I.J. gave him credit for that. So a certain ñ Found equitable tolling up to January. Therefore, I'll look at the dates after January. So the critical point is what happened after January, and the time that he finally files the motion, the second motion to vacate or to set aside, to rescind based, you know, in a sense of order. That's the critical time period. I agree, Your Honor. And in this case, what he does is he goes to one attorney who makes an effort to review the court file or apparently makes a request to review the court file. That's how he enters his appearance, and only for that reason. But there's no evidence in the administrative record that he actually even reviewed the court file. Then he goes to another attorney who indicates to him or reviews the court file, then gathers the documentation, gets his declaration. That's you, right? That's correct. Gets the facts of the case, submits it to Consumer Affairs. In other words, developing the Lizada requirement, and awaits for the Consumer Affairs to give him a response with respect to whether or not these are attorneys, in fact. It could be an attorney in a different state. There's 50 states. If you have a non-attorney representing someone in California, it's a possibility it's an attorney in another state. Is there a law that says you can wait for the Department of Consumer Affairs? I frankly never heard of the Department of Consumer Affairs. Yes, it's the Department of Los Angeles. It's an office that investigates fraud, not only this type of fraud. Is there a law that says you can wait for them? No, Your Honor, but we were obtaining vital information in the case, and part of the vital information was whether, in fact, these individuals agree. First of all, we had to locate one of them. One of them we never could locate, and the other one that was located by Consumer Affairs gave a response that the individual was located, was an attorney, and already had made arrangements with him to pay him back. So I disagree with the counsel that notice. Is there some case that says you get tolling during all that? My thought was that the law is you get six months of tolling to pick up the pieces after somebody messes up the case, and that's it. If that is true, Your Honor, then it would be six months from the point where the individual is aware of the law and is aware of the fraud, and he wasn't aware of all that until he met with his attorney, prepared his declaration, attorney gathered the information, but that wasn't enough. When was that? What date would you put on that? That would have been in March of 2002 when he prepared the declaration and filed with Consumer Affairs. And then why wait for Consumer Affairs? Because we want to make sure, given the three policy goals of Lozada, to provide clear and detailed exposition of the factual allegations. But Lozada, as I recall, was about the bar, not Consumer Affairs. That's correct. I'm not aware of a case that says you can wait for the City Department of Consumer Affairs. Disciplinary authority, Your Honor. They're not attorneys, are they? That's correct. If they're not attorneys, you can't file a bar. Now you can file with a state bar in California, but before you couldn't. Is there a case that says that that time is tolled while the City Department of Consumer Affairs is acting on it? No, Your Honor. I'm not aware of any specific case that talks about Los Angeles Consumer Affairs. Let me pick up on Judge Klinefeld's question. Is there a BIA decision that addresses non-attorneys and the need to comply with Lozada with respect to non-attorneys? I'm not aware of a case from the BIA that specifically addresses non-attorneys. As the Court knows, there are Ninth Circuit decisions that dealt with non-attorneys. We're applying Lozada to non-attorneys? Yes, Your Honor. Do you have a name of a case? Lopez is one. Let me see. I believe Pajardo, if I'm not mistaken. Well, we said that the Lozada requirements have to be modified because if they're non-attorneys, you can't complain to the state bar. So they recognize that they're non-attorneys and that the Lozada requirements apply to non-attorneys from the BIA's perspective? Yes, Your Honor, but not perfectly. That's the Ninth Circuit. Those are Ninth Circuit cases. However, we have to go to a disciplinary authority. Who would be a disciplinary authority for a non-attorney? Well, we'd go to the District Attorney's Office, go to Consumer Affairs. Are these non-attorneys required to be registered or certified with any agency? Yes. The Secretary of State of California, for example, requires immigration consultants to file a bond, therefore registering. There's no evidence in the record indicating that these individuals are immigration consultants. Does the Department of Corporations have authority to revoke their bond and whatnot? Yes, the Secretary of State can revoke their bond, especially if there's been a violation of the Immigration Consultant Act. So why didn't you file the complaint with the Secretary of State rather than the local consumer authority? Because there was no evidence that they were immigration consultants registered to begin with. So you don't file a complaint unless they're a registered immigration consultant. If they're nothing, then the best you can do is file with the police department, the DA's office, or L.A. Consumer Affairs if the case arrives out of Los Angeles. But if they're nothing, I don't see why you couldn't just file your motion to reopen. Lozada says you can't do it for ineffective assistance by a lawyer until you go through this process, which basically shows that the petitioner is serious and willing to charge a guy to his face and not just behind his back, and the lawyer gets a chance to respond. If it doesn't apply, if the person is not covered, then I can't see that you have to wait. And if you don't have to wait, you really can't wait. Well, first of all, you have to make a determination as to whether or not the individual is an attorney. Again, this individual is an attorney out of another state, for example, Pennsylvania or Connecticut. How would you find out? You would have to actually contact every state to determine whether or not they're counsel in that state. I don't know. It doesn't seem that hard to me. I mean, you ask your client, who did he go to and where was he? That's correct. And the client can have an assumption. If your client says he's never been to Connecticut in his life, never talk to a lawyer there. However, Your Honor, the court should know that there are attorneys that practice immigration law in California that are not California attorneys. Federal law allows that. Right. We know that. We know that. It's a big problem. We know there's a big problem with immigration consultants and notarios in the Latino community. It's a serious problem. And, therefore, we go to whatever disciplinary authority we have. We believe it's important to do that. Counsel? Yes, Your Honor. We're way over time, and we're repeating ourselves to you, I think. So I'll let my colleagues have more questions. So I'll bring it to a close. Thank you, Your Honor. And if I may, I would just request that the court either remand it back to the I.J. to give a more detailed decision or remand it, granting the petition. Thank you very much. Thank you. Thank you. Rivera v. Gonzalez is submitted. We'll hear Cortez-Rivera v. Gonzalez.
judges: Kleinfeld, Paez, Hart